IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

No. 21-7443

KEITH LOWE,

Appellant

v.

DR. SHERRY JOHNSON, et al.,

Appellees

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA

_____

INFORMAL RESONSE BRIEF FOR AFFIRMANCE OF APPELLEES DAVID BALLARD
AND JAMES RUBENSTEIN

_____

**ISSUE FOR REVIEW**

Whether the district court erred in dismissing Appellant's Eighth Amendment claims against Appellees David Ballard and James Rubenstein on the basis that from the undisputed evidence of record, a jury could not reasonably infer that these defendants were deliberately indifferent to Plaintiff's serious medical needs.

**SUPPORTING FACTS AND ARGUMENT**

A. Facts

Appellant is an inmate at the Mount Olive Correctional Complex ("MOCC") and brought this action pursuant to 42 U.S.C. § 1983 against former Commissioner of the West Virginia Division of Corrections, James Rubenstein, and former Warden of MOCC, David Ballard. (ECF No. 19).

Appellant has been diagnosed with epilepsy and suffers from seizures as a result thereof. (*Id.* at ¶ 15.) He is provided healthcare from Dr. Sherri Johnson through MOCC who had prescribed him Dilantin three (3) times a day for his condition. (*Id.* at ¶ 17.) As noted in neurosurgeon Dr. Constantine Amores' report, Dilantin is an anticonvulsant medication which requires regular blood tests due to it having a very narrow therapeutic margin. (ECF No. 114, Ex. A at 3). A low blood level of Dilantin in the blood puts the patient at risk for seizure recurrence, whereas an overdosage can result in liver and kidney toxicity. (*Id.*) Therefore, regular blood testing was necessary for the safe administration of this drug. (*Id.*)

Appellant advised Dr. Johnson he had a needle phobia and refused to allow blood to be drawn for blood testing. (ECF No. 76, Ex. 1 and Ex. 3). Dr. Johnson instructed the Appellant to execute an "AMA" (against medical advice) form indicating that he refused to submit to bloodwork, yet the Appellant continued to be given Dilantin for some time. (ECF No. 76, Ex. 3). Appellant acknowledged that he had a "pretty bad seizure" on or about February 14, 2015, while taking Dilantin, but contended that the "medication was clearly controlling my seizures for the most part." (ECF No. 19 at ¶ 19 and Ex. 7; *See also* ECF No. 114, Ex. B).

On April 2, 2015, Appellant's Dilantin prescription was terminated. (ECF. No. 19 at ¶ 17). Appellant alleges that thereafter he had a seizure on April 6, 2015 and again on April 11, 2015. (*Id.* at ¶¶ 26, 33.)    Dr. Johnson then prescribed the Appellant an alternative anti-seizure medication. (*Id.* at ¶ 48). Neurosurgeon Dr. Constantino Amores reviewed more than ten (10) years

of Appellant's medical records and issued a report agreeing with the decision to discontinue administering Dilantin to the Appellant stating: "It was reasonable to discontinue administering Dilantin to Mr. Lowe because he refused to undergo blood testing for blood level determinations necessary for the safe administration of this medication." (ECF No. 114, Ex. A at p. 4). Dr. Amores further opined that it was also reasonable for Dr. Johnson to prescribe Keppra as it is an excellent alternative anticonvulsant adding that whereas Keppra had its own side effects such as dizziness, headaches, irritability, sleepiness and mood changes, none were as serious as possible dizziness, self-harm, mood swings, depression, liver and kidney toxicity such as with Dilantin that necessitated the need for regular blood testing. (*Id.*)

Appellant wrote to Rubenstein on April 4, 2015 requesting that he direct prison medical personnel to administer Dilantin. (*Id.* at ¶23; *See also* ECF No. 114, Ex. B). On April 7, 2015, Appellant also wrote to Ballard also requesting that he direct Dr. Johnson to reinstate his prescription for Dilantin. (ECF No. 19 at ¶29; *See also* ECF No. 114, Ex. C). According to their own affidavits, because they had no medical training or expertise enabling them to properly address medical or pharmacological issues, Rubenstein and Ballard regularly deferred any inmate grievances pertaining to medical treatment and/or pharmacological treatment to be handled by the prison's contracted medical professionals employed by Wexford Health Sources, Inc. (ECF No. 114, Ex. D; *See also* ECF No. 114, Ex. E). Both Ballard and Rubenstein attest that the letters they received from the Appellant regarding discontinuation of his anti-seizure medication were forwarded onto Wexford Health personnel to be handled by medical professionals having the expertise, qualifications, and training to properly make such decisions. (*Id.*) Both Rubenstein and Ballard attest that they "relied on the medical on the medical expertise, qualifications, and training of Wexford medical personnel to make all medical and pharmacological decisions in response to

Mr. Lowe's concerns with regard to a change in his medication." (ECF No. 114, Ex. D at ¶10; *See also* ECF No. 114, Ex. E at ¶10).

Appellant then filed an administrative grievance on April 21, 2015, seeking a Dilantin prescription. (ECF. No. 19 at ¶37). Medical director for Wexford Health Sources, Donna Warden responded to Plaintiff's grievance on April 23, 2015, stating:

> Mr. Lowe, the Dilantin was discontinued because you were noncompliant with providing blood for lab analysis that is required to monitor during administration of this specific medication. This was explained to you. Now, you have been prescribed another oral anti-seizure medication "Keppra". This medicine will not require lab tests to be draw for therapeutic monitoring.

(ECF No. 114 at Ex. F.) The grievance was received by the Warden's office on May 5, 2015 and reviewed and signed off on by Mr. Ballard on May 12, 2015. (*Id*.) The grievance was then received by the Commissioner's office on May 15, 2015, which was then accepted and affirmed. (*Id*.) Whereas there is dispute as to whether the replacement medication, Keppra was first administered to the Plaintiff on April 11, 2015, as indicated by Dr. Amores (ECF No. 114, Ex. A), or April 16, 2015, as indicated on Dr. Johnson's Physician's Order (ECF No. 116, Ex. A), or April 21, 2015, as alleged by the Appellant (ECF No. 76, Ex. 1 at 3, ¶7; ECF No. 122, Ex. C at ¶7), Appellant had been prescribed his new medication by the time Ballard and Rubenstein were presented with Appellant's grievance, on May 12, 2015 and May 15, 2015, respectively, and thus, no intervention was then necessary.

Appellees Ballard and Rubenstein filed their motion for summary judgment arguing they were not only entitled to rely on the judgment of trained medical professionals under these circumstances, but they were required to do so, pursuant to holdings in *Shakka v. Smith*, 71 F.3d 162, 167 (4th Cir. 1995) and *Miltier v. Beorn*, 896 F.2d 848, 854 (4th Cir. 1990). (ECF No. 115 at 9 – 10). They did not ignore the Appellant's medical needs or "fail to act" as Appellant alleges,

but rather they referred the matter to medical personnel with the expertise to address the serious needs and appropriate care of Appellant. (ECF No. 120 at 3 – 5). Additionally, Appellees Ballard and Rubenstein indicated that the evidence of record demonstrates that, after Appellant filed his grievance concerning the discontinuation of the Dilantin, they appropriately reviewed and considered the grievance to ensure that it was properly addressed by medical personnel, and determined that the new medication had been prescribed by that time. (ECF No. 115 at 10). Moreover, Ballard and Rubenstein, relying on the expert report by Dr. Amores, asserted that there is no evidence of deliberate indifference to a serious medical need because the change in Appellant's medication was reasonable under the circumstances, and as such were entitled to summary judgment as a matter of law. (*Id*. at 12 – 13). The matter was referred to Federal Magistrate Judge Dwane Tinsley who recommended the District Judge grant Ballard and Rubenstein's motions for summary judgment on the basis that "there is an absence of evidence from which a jury could reasonably infer that Ballard and Rubenstein were deliberately indifferent to Plaintiff's serious medical needs." (ECF No. 127 at 18 – 19). Chief District Judge Johnston entered a Memorandum Opinion and Order on September 20, 2021, finding that there is a lack of evidence to support a claim of deliberate indifference and adopting Judge Tinsley's Proposed Findings and Recommendation and granting Defendants' motions for summary judgment. (ECF No. 141 at 13). Plaintiff has appealed simply asserting that "Judge Johnston erred by finding that Defendants were not deliberately indifferent." (ECF No. 144).

 B. Argument

 **Whether the district court erred in dismissing Appellant's Eighth Amendment claims against Appellees David Ballard and James Rubenstein on the basis that from the undisputed evidence of record, a jury could not reasonably infer that these defendants were deliberately indifferent to Plaintiff's serious medical needs.**

  Appellant does not dispute the facts as presented, but rather disputes the district court's

application of law. (ECF No. 135, ¶ 34). Appellant asserts that Commissioner Rubenstein and Warden Ballard were not entitled to rely on the medical expertise of the prison's contracted medical providers but rather had a duty to intervene in the medical treatment provided by Dr. Johnson. (*Id.* at ¶¶ 12-13). By not doing so, Appellant contends that Rubenstein and Ballard exhibited deliberate indifference to his serious medical needs. Accordingly, there is no dispute as to material facts, only a question of law. The applicable law is as follows:

In *Farmer v. Brennan*, 511 U.S. 825, 832 (1994), the Supreme Court held that the Eighth Amendment to the Constitution "imposes duties on [prison] officials who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" This is a low standard. The Supreme Court emphasized that "[p]rison conditions may be 'restrictive and even harsh.'" *Id*. at 833.

Moreover, to sustain an Eighth Amendment claim, a prisoner must show two things: (1) "the deprivation must be, objectively, 'sufficiently serious;'" that is, "denial of 'the minimal civilized measure of life's necessities;'" and (2) the prison official had a "'sufficiently culpable state of mind;'" that is, "'deliberate indifference' to inmate health or safety." *Id*. at 834. (Citations omitted.) The Supreme Court rejected an argument that an objective test of deliberate indifference be established. We hold instead that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Id*. at 837.

To sustain a claim of deliberate indifference against a non-medical prison official, such as

Rubenstein and Ballard, an inmate must show that: (1) the supervisory defendants failed promptly to provide an inmate with needed medical care; (2) that the supervisory defendants deliberately interfered with the prison doctor's performance; or (3) that the supervisory defendants tacitly authorized or were indifferent to the prison physicians' constitutional violations. *Miltier v. Beorn,* 896 F.2d 848, 854 (4th Cir. 1990). A plaintiff cannot establish supervisory liability merely by showing that a subordinate physician was deliberately indifferent to his needs. *Id.* Rather, the plaintiff must show that a supervisor's corrective inaction amounts to deliberate indifference or tacit authorization of the offensive practice. *Id*. In reviewing claims of medical care, supervisors are entitled to rely on the professional judgment of trained medical personal personnel. *Id.*

In *Shakka v. Smith*. 71 F.3d 162 (4th Cir. 1995) an inmate was housed in the hospital ward when he pulled plumbing fixtures from a wall and used them to break windows. *Id.* The prison psychologist felt that the inmate was danger of another aggressive episode and therefore ordered that the inmate be placed in another cell without his belongings, including his wheelchair. *Id.* The inmate brought § 1983 action alleging prison officials subjected him to cruel and unusual punishment. *Id.* Specifically, Shakka alleged that the prison warden and chief of security had knowledge that he was deprived of his wheelchair and that through their failure to intervene they were deliberately indifferent to a serious medical need. *Id.* Whereas it was undisputed that the wheelchair constituted a serious medical need, the district court granted summary judgment in favor the prison officials ruling that the prison officials' inaction did not amount to deliberate indifference. *Id.* On appeal, this Court affirmed the district court's decision recognizing that the prison officials lacked the authority to contravene the prison psychologist's instructions and order the wheelchair to be returned Shakka. *Id.* at 167. Moreover, much like in *Miltier* this Court held that supervisory prison officials were entitled to rely on professional judgment of trained medical

personnel, and if they had interfered with a prisoner's medical treatment ordered by such personnel, the supervisory officials would have been deliberately indifferent to the prisoner's medical needs by intentionally interfering with treatment by trained medical personnel. *Id.* citing to *Miltier*, 896 F.2d at 854.

1. **The undisputed evidence of record demonstrates Appellees Ballard and Rubenstein relied on the professional judgment of trained medical personnel to properly address issues concerning Appellant's medical care**

In the instant matter, Appellant contends that Appellees Ballard and Rubenstein were deliberately indifferent to his serious medical needs in failing to directly respond to his letters regarding Dr. Johnson's termination of his anti-convulsant medication Dilantin and ordering medical personnel to administer the medication. However, the evidence of record demonstrates Appellees Ballard and Rubenstein were anything but deliberately indifferent to Appellant's serious medical needs.

Both Ballard and Rubenstein executed sworn affidavits attesting that they are not medical physicians, nor have either undergone formal medical training qualifying them to make medical or pharmacological decisions. (ECF No. 114, Ex. D at ¶ 3; *See also* ECF No. 114, Ex. E at ¶ 3). Both Appellees note that the West Virginia Department of Corrections contracted Wexford Health Sources, Inc. to provide medical, dental, mental health and pharmacy services to inmates at Mount Olive Correctional Complex. (ECF No. 114, Ex. D at ¶ 4; *See also* ECF No. 114, Ex. E at ¶ 4). Ballard and Rubenstein attest that whereas in their respective roles as warden and commissioner they would ensure an inmate's access to medical care, they came to rely on the medical expertise, qualifications, and training of Wexford Health Sources, Inc. personnel as to the reasonable and appropriate standards of medical care. (ECF No. 114, Ex. D at ¶ 6-7; *See also* ECF No. 114, Ex. E at ¶ 6-7). Ballard attested that when his office would receive letters or grievances concerning

an inmate's medical treatment and/or pharmacological care, they would be forwarded onto the medical director for Wexford so the issue could be addressed by qualified medical personnel having the expertise, qualifications, and training to properly address such concerns. (ECF No. 114, Ex. E at ¶ 5). Similarly, Rubenstein attested that when he would receive correspondence, notices and/or grievances involving an inmate's medical and/or pharmacological care, the grievance was reviewed by his office, then forwarded onto Wexford medical professionals for the grievance to be addressed by qualified medical personnel, again, having the expertise, qualifications, and training to properly address such concerns. (ECF No. 114, Ex. D at ¶ 5).

Despite the Appellant's contentions to the contrary, deliberate indifference cannot be inferred simply because Ballard and Rubenstein did not directly respond to his letters addressed to them regarding his prescription for Dilantin being discontinued. Ballard attests that because the letter addressed to him from the Appellant pertained to a medical and/or pharmacological decision, the letter was forwarded onto the medical director for Wexford Health Sources to be handled by a medical professional with the expertise, qualifications, and training to properly make such decisions. (ECF No. 114, Ex. E at ¶ 8 – 9). Ballard attests that he relied on the medical expertise, qualifications, and training of Wexford medical personnel to respond appropriately to Plaintiff's concerns regarding his anti-convulsant medication. (*Id.* at ¶ 10.) Similarly, Rubenstein attested that because the letter addressed to him from the Appellant pertained to a medical and/or pharmacological issue, the letter was forwarded onto Wexford Health personnel with the expertise, qualifications, and training to appropriately respond to such issue. (ECF No. 114, Ex. D at ¶ 8-9). Rubenstein attested that like Ballard he relied on the medical expertise, qualifications, and training of Wexford medical personnel to properly respond to the Appellant's concerns regarding the change in his epilepsy medication. (ECF No. 114, Ex. D at ¶ 10). As indicated above, supervisory

prison officials are not only entitled to but are expected and required to rely on the professional judgment of trained medical personnel with respect to an inmate's medical care. *See Shakka,* 71 F.3d at 167; *See also Miltier,* 896 F.2d at 854. Accordingly, it simply cannot be said that Ballard and Rubenstein were deliberately indifferent to Appellant's medical needs when the evidence of record clearly demonstrates that they referred the medical issue to trained medical personnel for handling and relied on the professional judgment of trained medical personnel to properly address the issue. Again, the Appellant does not dispute the factual assertions set forth by Appellees Rubenstein and Ballard. Appellant merely argues that they were not entitled to rely on Wexford personnel as to decisions regarding his medical care. (*See* ECF No. 118 at 3). However, in accordance to the clearly established authority directing that non-medical personnel may rely on the judgment of trained medical professional with respect to reasonable and appropriate standards of care – specifically the holdings in *Shakka* and *Miltier* – the district court was correct in its opinion and order granting Ballard and Rubenstein summary judgment.

Moreover, the undisputed evidence of record further demonstrates that after Appellant filed a grievance complaining that his prescription Dilantin had been discontinued by Dr. Johnson, Ballard and Rubenstein reviewed and considered the Appellant's grievance to ensure that it was addressed by medical personnel. As discussed above, the Appellant filed a grievance on April 21, 2015, seeking a prescription for Dilantin. (ECF No. 114, Ex. F). Medical director for Wexford Health Sources responded to Plaintiff's grievance on April 23, 2015, stating:

> Mr. Lowe, the Dilantin was discontinued because you were noncompliant with providing blood for lab analysis that is required to monitor during administration of this specific medication. This was explained to you. Now, you have been prescribed another oral anti-seizure medication "Keppra". This medicine will not require lab tests to be draw for therapeutic monitoring.

(*Id.)* The grievance was received by the Warden's office on May 5, 2015 and reviewed and signed

off on by Mr. Ballard on May 12, 2015. (*Id.*) The grievance was thereafter forwarded onto and received by the Commissioner's office on May 15, 2015, at which time it was reviewed and affirmed by former Commissioner Rubenstein. (*Id.*) This final review and affirmation of Wexford's handling of Appellant's complaints regarding his medical treatment further demonstrates that Ballard and Rubenstein were anything but deliberately indifferent to Appellant's medical needs. Evidence demonstrates that not only did Ballard and Rubenstein refer Appellant's complaints regarding his medical care onto trained, qualified medical personnel to respond to such concerns, but that both Ballard and Rubenstein administratively reviewed and considered Appellant's grievance, finding that the Appellant had been prescribed alternative anti-seizure medication. For this reason also, the district court properly found there is no evidence from which a jury could reasonably infer that Ballard and Rubenstein were deliberately indifferent to the Appellant's serious medical needs.

   **2. The undisputed evidence of record demonstrates the medical care provided to the Appellant was reasonably adequate and appropriate.**

Appellant's general allegation against Ballard and Rubenstein is that they had been notified that Dr. Johnson discontinued his prescription for Dilantin yet failed to intervene in his medical treatment and order medical personnel to reinstate his prescription for Dilantin. (ECF No. 19 at 17 ¶ 51.) Whereas Ballard and Rubenstein have argued above that they relied on the medical expertise, training, and experience of qualified medical personnel and that under the law are entitled to do so thereby relieving them from any claims of deliberate indifference, Appellant's claims fail for even a simpler reason in that the medical care provided was reasonably adequate and appropriate and therefore there was no need for intervention into his medical care.

As discussed above, to succeed on an Eighth Amendment deliberate indifference claim, the plaintiff "must show that he is incarcerated under conditions posing a substantial risk of

serious harm." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotation marks omitted). This "deprivation … must be, objectively, sufficiently serious; … the denial of the minimal civilized measure of life's necessities." *Id*. (internal quotation marks omitted). Second, the "prison official must have a sufficiently culpable state of mind … [i]n prison-condition cases that state of mind is one of deliberate indifference to inmate health and safety." *Id*. (internal quotation marks omitted). "[D]eliberate indifference to a substantial risk of serious harm to a prisoner is equivalent of recklessly disregarding that risk." *Id.* at 836. "[T]o act recklessly in [this context,] a person must consciously disregar[d] a substantial risk of serious harm." *Id*. at 839 (internal quotation marks omitted). And while the prisoner does not have to show the prison official acted or omitted to act for the very purpose of causing harm or with knowledge that harm will result, the prisoner must show "more than mere negligence." *Id.* at 835. Indeed, "a prisoner does not enjoy a constitutional right to the treatment of his … choice" so long as the medical treatment provided is adequate. *De'lonte v. Johnson*, 708 F.3d 520, 526 (4th Cir. 2013). Moreover, the medical care need not be the best possible care, it only must be "reasonable" care. *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (citing *Blanks v. Cunningham*, 409 F.2d 220 (4th Cir. 1969); *Edwards v. Duncan*, 355 F.2d 992 (4th Cir. 1966)).

Turning now to the matter at hand, Appellant alleges that Ballard and Rubenstein "…knew that you should never abruptly stop Dilantin" and that "[a]brupt discontinuation of Dilantin is never advisable." (ECF No. 19 at 16 – 17 ¶ 48.) However, that is the Appellant's own unfounded conclusion. The Appellant is not a physician, and there is absolutely no medical evidence of record to suggest that it was ill-advised or unreasonable for the Dilantin to be immediately discontinued. On the contrary, neurosurgeon Dr. Constantino Amores issued a report with regard to this matter in which he concluded "[i]t was reasonable to discontinue administering Dilantin to Mr. Lowe

because he refused to undergo blood testing for blood level determinations necessary for the safe administration of this medication." (ECF No. 114, Ex. A at 4). Dr. Amores concluded "[i]t was also reasonable to prescribe Keppra, an excellent alternative drug which does not require blood level testing." (*Id.*) Whereas evidence demonstrates there was a gap of nearly three (3) weeks between the discontinuation of Dilantin and prescription for the alternative anti-convulsant Keppra, Dr. Amores did not take issue with the timing of the discontinuation of Dilantin and the replacement with Keppra in his report. (*Id.*).

It is apparent that the Appellant prefers to select his own course of treatment and that his main contention here is that Dr. Johnson failed to provide him with the medical treatment of his choice. (ECF No. 19 at ¶ 48). Although Dr. Johnson terminated his Dilantin prescription, she explained her reasons for doing so and provided alternative medication that did not require him to undergo blood testing. (ECF No. 19 at ¶¶ 30; 48). As discussed above, "a prisoner does not enjoy a constitutional right to the treatment of his … choice", but rather he is entitled to "reasonable" medical care. *See De'lonte,* 708 F.3d at 526; *See also Vinnedge,* 550 F.2d at 928. The evidence of record, specifically Dr. Amores' expert medical report, clearly indicates that the medical care provided to the Appellant was in fact reasonable, and therefore any alleged need on the part of prison officials to intervene in medical care provided is thereby eliminated. Because the uncontroverted evidence of record demonstrates the Appellant received reasonably adequate and appropriate medical care, further supported by the report by Dr. Amores, the district court was correct in granting Defendants Ballard and Rubenstein's motions for summary judgment, as there is no evidence that they acted with deliberate indifference.

## CONCLUSION

Because the undisputed evidence of record fails to support a claim of deliberate

indifference against Ballard and Rubenstein, the district court was correct in granting the Appellees' motions for summary judgment. Accordingly, Appellees respectfully request the Court AFFIRM the district court's September 20, 2021 Memorandum Opinion and Order granting summary judgment.

Respectfully submitted,

**/s/ John P. Fuller**
**John P. Fuller (WV Bar #9116)**
**Jeffrey M. Carder (WV Bar #12725)**
**BAILEY & WYANT, PLLC**
**500 Virginia Street, East, Suite 600**
**Post Office Box 3710**
**Charleston, West Virginia  25337-3710**
**(304) 345-4222**
**jfuller@baileywyant.com**
**jcarder@baileywyant.com**

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

No. 21-7443

KEITH LOWE,

Appellant

v.

DR. SHERRY JOHNSON, et al.,

Appellees

_____

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of foregoing "**INFORMAL RESPONSE BRIEF FOR AFFIRMANCE OF APPELLEES DAVID BALLARD AND JAMES RUBENSTEIN**" was served upon the following parties through the Court's Electronic Case Filing (ECF) system and via U.S. Regular Mail on this day, Wednesday, October 27, 2021:

Keith W. R. Lowe – Inmate #3380501
Mount Olive Correctional Complex
1 Mountainside Way
Mt. Olive, WV 25185
*Pro Se Plaintiff*

Melvin F. O'Brien
Michelle D. Baldwin
Dickie, McCamey & Chilcote, L.C.
2001 Main Street, Suite 501
Wheeling, WV 26003-2854
*Counsel for Dr. Sherri Johnson*

**/s/ John P. Fuller**
**John P. Fuller (WV Bar #9116)**
**Jeffrey M. Carder (WV Bar #12725)**
**BAILEY & WYANT, PLLC**
**500 Virginia Street, East, Suite 600**
**Post Office Box 3710**
**Charleston, West Virginia  25337-3710**
**(304) 345-4222**
**jfuller@baileywyant.com**
**jcarder@baileywyant.com**
